UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICHARD JOHNSON,<br><br>              Plaintiff,<br><br>        v.<br><br>7-ELEVEN, INC., et al.,<br><br>              Defendants. | Case No.  5:21-cv-06202-EJD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE LAW CLAIM WITHOUT PREJUDICE**<br><br>Re: ECF No. 20 |

Pending before this Court are Plaintiff's motion for summary judgment (ECF No. 20) and Defendants' cross motion for summary judgment (ECF No. 30).  The Court heard the parties on June 1, 2023.  For the reasons stated below, the Court **DENIES** Plaintiff's motion and **GRANTS in part** Defendants' cross motion.

The Court also declines to exercise supplemental jurisdiction over Plaintiff's state law claim and **DISMISSES** the state law claim for lack of jurisdiction without prejudice.

## I.      BACKGROUND

Plaintiff Richard Johnson initiated this American with Disabilities ("ADA") action on August 11, 2021 against Defendant 7-Eleven, Inc. ("7-Eleven") on South 11th St in San Jose and the lessor of the real property, Defendant SEJ Asset Management and Investment Company (collectively, "Defendants").  Johnson uses a wheelchair and has a specially equipped van with a disabled placard.  Compl., ECF No. 1 ¶ 1.  Johnson alleges that he visited 7-Eleven on three occasions en route to a monthly service commitment.  *Id.* ¶¶ 15–16.  He further alleges that on

United States District Court
Northern District of California

each occasion he encountered barriers as a wheelchair user resulting in frustration and embarrassment. *Id.* ¶¶ 17, 39. Johnson claims that, by failing to provide ADA-compliant accessible parking and interior access, he has been denied full and equal access to the public accommodation. *Id.* ¶ 40.

The complaint alleges that the following aspects of 7-Eleven and the property are not ADA compliant: the ramp into the store; lack of an accessible path from the public right of way into the store; no "tow away" language on the handicap parking sign; the accessible parking space has a surface slope greater than 2%; the slope of the curb ramp exceeds 2%; missing (or not visible) language from the surface of the accessible parking space, such as "no parking"; the path of travel from the accessible parking space is in excess of 2%; the entry door of the store is too heavy to operate and closes too quickly; inaccessible store aisles; and the counters are too high. Compl., ¶¶ 10–37. Johnson also asserts a cause of action under California's Unruh Civil Rights Act ("Unruh Act"). *Id.* ¶¶ 51–55. He alleges that these barriers are easily removed without great difficulty and that he intends to return once the violations have been fixed. *Id.* ¶¶ 41–42.

Johnson moved for summary judgment on October 5, 2022—approximately 5 months before the close of fact discovery and 7 months before the dispositive motion deadline. ECF No. 20. Defendants' first opposition asked the Court to deny Plaintiff's motion for summary judgment as premature and requested leave to file a more fulsome opposition after discovery was completed. ECF No. 21. The Court heard oral argument on March 16, 2023. At the hearing, the Court set a further hearing and ordered Defendants to file a fulsome opposition brief by March 30 and Johnson to reply by April 20. ECF No. 29.

Defendant asks the Court to deny Plaintiff's motion, dismiss the ADA claim as moot, and decline to exercise jurisdiction over Johnson's state law claim. *See generally* Defs.' Cross Mot. and Opp'n to Pl. Richard Johnson's Mot. for Summ. J., or in the Alternative Summ. Adjudication ("Opp'n"), ECF No. 30.

United States District Court
Northern District of California

## II.      LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it would affect the outcome of the suit under the governing law, and a disputed issue is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party can meet this initial burden, the burden then shifts to the non-moving party to produce admissible evidence and set forth specific facts showing that a genuine issue of material fact does indeed exist for trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). If the non-moving party produces enough evidence to show a genuine issue of material fact exists, then it defeats the motion; otherwise, the moving party is entitled to summary judgment. *Id.*

In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *See Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The Court may not weigh conflicting evidence as to a disputed fact nor may it make credibility determinations; any disputed factual issues must be resolved in favor of the non-moving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). However, the Court need not credit the non-moving party's version of events where it is blatantly contradicted by the record. *See Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020).

United States District Court
Northern District of California

III.    **DISCUSSION**

    A.    **ADA Claim**

Title III of the ADA prohibits discrimination, including "benign neglect, apathy, and indifference," on the basis of disabilities within places of public accommodation. 42 U.S.C. § 12182(a).  The ADA states in full that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  The Ninth Circuit evaluates claims arising under the statute in three prongs: (1) whether plaintiff is disabled within the meaning of the ADA; (2) whether defendant "owns, leases (or leases to), or operates" a place of public accommodation; and (3) whether plaintiff was denied public accommodations by defendant because of their disability.  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  It is undisputed that Johnson is disabled within the meaning of the ADA and that the 7-Eleven is a "public accommodation" as defined under the ADA.  ECF No. 30-1 ¶¶ 2–3.

There are several types of discrimination enumerated in the ADA.  Discrimination under the pertinent section, Section IV, includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable."[1]  42 U.S.C. § 12182(b)(2)(A)(iv).  The statute defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  "Whether a facility is "readily accessible" is defined, in part, by the ADA Accessibility Guidelines ("ADAAG")."[2]  *Chapman*, 631 F.3d at 945.

---

[1] The parties appear to agree that the 7-Eleven facility was constructed before the enactment of the ADA, and therefore is an "existing facility."  *See generally* Mot.; Opp'n at 6.

[2] The 2010 Standards contain a "safe harbor" provision.  This provision exempts an "existing" facility's element from its technical requirements if the facility's element has not been altered on or after March 15, 2012 and already complies with the 1991 Standards.  28 C.F.R. § 36.304(d)(2)(i).  "However, elements in existing facilities that do not comply with the 1991 Standards must be modified to the extent readily achievable to comply with the 2010 Standards." *Scott Johnson, v. Simper Investments, Inc.*, No. 20-CV-01061-HSG, 2021 WL 4749410, at *4 (N.D. Cal. Oct. 12, 2021) (citing 28 C.F.R. § 36.304(d)(2)(ii)(B)).

ORDER DENYING PL'S MOT. FOR SUMM. J.; GRANTING DEFS.' CROSS-MOT. FOR SUMM. J.; DISMISSING STATE LAW CLAIM WITHOUT PREJUDICE

1      In Defendants' opposition and cross-motion for summary judgment, Defendants: (i)

2   challenge Johnson's intent to return to the 7-Eleven; (ii) assert that Johnson's injunctive claims are

3   moot; and (iii) alternatively, Defendants contend that if they are not moot, Johnson has failed to

4   establish that removal of the alleged barriers is readily achievable.

5      **B.      Standing**

6      To establish Article III standing, a plaintiff "must demonstrate that he has suffered an

7   injury-in-fact, that the injury is traceable to the Store's actions, and that the injury can be redressed

8   by a favorable decision." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir.

9   2011). "[A]n ADA plaintiff can establish standing to sue for injunctive relief either by

10  demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a

11  noncompliant facility." *Id.* at 944. A plaintiff seeking injunctive relief must also "demonstrate a

12  'real and immediate threat of repeated injury' in the future." *Id.* at 946 (quoting *O'Shea v.

13  Littleton*, 414 U.S. 488, 496 (1974)).

14     Johnson has established an injury-in-fact by alleging that he visited 7-Eleven on three

15  occasions and that on each occasion he encountered barriers as a wheelchair user resulting in

16  frustration and embarrassment. *Id.* ¶¶ 15–17, 39. Johnson alleges that he is currently deterred

17  from returning to 7-Eleven due to the existing barriers but that he "will return to avail himself of

18  the goods and services . . . once the facilities are accessible." Compl. ¶ 42.

19     The Ninth Circuit has held that "encountering an ADA violation in the past at a place of

20  public accommodation is not enough. . . . a plaintiff must establish a sufficient future injury by

21  alleging that they are either currently deterred from visiting the place of public accommodation

22  because of a barrier, or that they were previously deterred and that they intend to return to the

23  place of public accommodation, where they are likely to reencounter the barrier." *Langer v.

24  Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023) (internal citations omitted).

25     Defendants challenge whether Johnson has established concrete future plans to return.

26  Defendants argue that Johnson will not return because he is not a regular customer and Johnson

27

28  Case No.: 5:21-cv-06202-EJD
    ORDER DENYING PL'S MOT. FOR SUMM. J.; GRANTING DEFS.' CROSS-MOT. FOR
    SUMM. J.; DISMISSING STATE LAW CLAIM WITHOUT PREJUDICE
    5

1    visited the area for weekly service commitments that have since concluded.  Compl. at 5; ECF No.

2    30-2, 26:19–27:11.  During his deposition Johnson confirmed that he does not have other

3    obligations in the area.  ECF No. 30-2, 27:9–23.  However, "motivation is irrelevant to the

4    question of standing under Title III of the ADA."  *See C.R. Educ. & Enf't Ctr. v. Hosp. Properties*

5    *Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017).  Johnson has visited the 7-Eleven since filing the

6    complaint.  Reply at 3.  That Johnson has returned the following year "is convincing evidence of

7    his professed intent to return is sincere and plausible."  *Langer*, 57 F.4th at 1098.

8          Thus, Johnson has established standing.

9          **C.       Mootness of ADA Claim**

10          The critical issue before the Court is mootness.  Injunctive relief is the only available relief

11    under the ADA.  42 U.S.C. §§ 12188(a)(2), 12205; *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631

12    F.3d 939, 946 (9th Cir. 2011) (en banc).

13          To be entitled to injunctive relief under the ADA, Johnson must first show that 7-Eleven

14    has violated one or more applicable accessibility standards.  *Moeller v. Taco Bell Corp.*, 816 F.

15    Supp. 2d 831, 847 (N.D. Cal. 2011).  Johnson must also show that that removal of the violation is

16    readily achievable.  *Lopez v. Catalina Channel Express*, 974 F.3d 1030, 1034 (9th Cir. 2020).  The

17    Court first considers whether the alleged violations have been remedied.

18          Johnson's Certified Access Specialist, Bassam Altwal, inspected 7-Eleven on June 13,

19    2021 and observed several ADA violations.  *See* Bassam Altwal's Decl. ("Altwal Decl."), ECF

20    No. 20-2.  Defendants' March 30, 2023 opposition includes a report from Neal Casper, a

21    California Certified Access Specialist who inspected the property on October 11, 2022 and

22    January 25, 2023.  *See* Ex. B to Decl. of Neil Casper ("Casper Decl."), ECF No. 30-6.  Casper's

23    report indicates that the alleged barriers have been corrected and/or the remaining alleged

24    noncompliant violations identified by Johnson and Altwal are, in fact, compliant with ADA

25    Standards.  Johnson has not submitted any declaration showing a likelihood that controverting

26    evidence exists.  Indeed, Johnson concedes that "[b]y the time Defendants' expert witness

27

28    Case No.: 5:21-cv-06202-EJD
      ORDER DENYING PL'S MOT. FOR SUMM. J.; GRANTING DEFS.' CROSS-MOT. FOR
      SUMM. J.; DISMISSING STATE LAW CLAIM WITHOUT PREJUDICE

United States District Court
Northern District of California

1   examined the store, the problems Mr. Johnson encountered had, according to Defendants, been

2   fixed."  Pl.'s Reply Brief ("Reply"), ECF No. 31; ECF No. 30-1 ¶ 6.[3]

3        Defendants therefore assert that none of the alleged barriers are present at the 7-Eleven

4   property and Johnson's claim for injunctive relief must be dismissed.  Opp'n at 6.  "Because a

5   private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA,

6   a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a

7   plaintiff's ADA claim."  *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011).  "A

8   case might become moot if subsequent events make it absolutely clear that the allegedly wrongful

9   behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Env't*

10  *Servs.*, 528 U.S. 167, 190 (2000).  "[T]he question is not whether the precise relief sought at the

11  time the application for an injunction was filed is still available. The question is whether there can

12  by any effective relief."  *West v. Secretary of Dept. of Transp.*, 206 F.3d 920, 925 (9th Cir. 2000).

13       A defendant claiming its voluntary compliance moots a case bears the burden of showing

14  the wrongful conduct will not recur.  *Friends of the Earth, Inc.*, 528 U.S. at 189.  In the context of

15  ADA claims, "[c]ourts have held that where structural modifications are made, [ ] it is absolutely

16  clear that the allegedly wrongful behavior could not reasonably be expected to occur in the

17  future."  *Moore v. Saniefar*, 2017 WL 1179407, at *6 (E.D. Cal. Mar. 29, 2017) (citation and

18  quotation marks omitted).

19       The Court analyzes each of Johnson's allegations in turn.

20              **1.    Accessible Parking Space Signs**

21       First, Johnson alleges that the accessible parking space signs lack language informing

22  violators that they will be towed.  Compl. ¶ 23.  Casper notes that Altwal fails to cite any section

23  of the 1991 or 2010 Standards requiring such language, and he contends that a lack of a "tow

24  away" sign is not a violation of the ADA.  Casper Decl. at 17.

25

26  [3] It is undisputed that "[a]s of September, 2022, the parking lot at 7-Eleven has been repaved, the
    parking spaces have been repainted, ADA signage has been replaced, and modifications have been
27  made to interior paths of travel."  ECF No. 30-1 ¶ 6.

United States District Court
Northern District of California

Next, Johnson alleges that the accessible parking signage lacks certain language required by the ADA.  Compl. ¶ 28.  Altwal specifically contends that the parking signage does not include language stating the parking space is "Van Accessible" nor does it state there is a minimum fine of $250 for violators.  Altwal Decl. ¶¶ 26–27.  Casper notes that Altwal does not cite to any section of the ADA Standards for either alleged violation, contending that the failure to provide a sign that states "Van Accessible" and "Minimum Fine $250" are not violations of the ADA.  Casper Decl. at 26.  Section 4.6.4 of the 1991 Standards does, in fact, require a "Van Accessible" sign at accessible parking spaces that comply with 4.1.2(5)(b).  Nevertheless, Casper reports that the accessible parking space is identified with a sign at the head of the space depicting the international symbol of accessibility and which includes language indicating that the space is van accessible and stating, "Minimum Fine $250."   Casper Decl. at 26.

Finally, Johnson alleges that the parking space surface area lacks visible "no parking" wording.  Compl. ¶ 29.  Altwal contends that "[i]n some areas, the "NO PARKING" letters designed to create ingress and egress access for those parking in a parking space designated as for someone with a disability are NOT a minimum of 12 in. high and located so they are visible to traffic enforcement officials."  Altwal Decl. ¶ 28.  Altwal does not cite any ADA Standard.

Casper asserts that the ADA does not require "NO PARKING" to be painted within the access aisle, noting that Altwal cites Title 24 Section 1129B.3 of the California Code of Regulations (California Building Code, or "CBC") in support.  To the extent Altwal relies solely on the CBC in support of Johnson's allegations, CBC violations do not establish violations of the ADA.  Nevertheless, Casper's report indicates the "NO PARKING" letters measure 12 inches high and are fully visible.  Casper Decl. at 26, 28.

Defendants have since repainted and mounted new ADA-compliant signage.  Accordingly, Johnson has not shown the accessible parking space signage violates the ADA.

### 2. Directional and Informational Signs

Next, Johnson's expert contends that the exterior route of travel onto 7-Eleven's property

United States District Court
Northern District of California

1    and leading into the store lacks "direction and informational signage," citing § 4.1.2(7) and CBC §

2    1127B.3.  Altwal Decl. ¶ 18.  Casper argues that § 4.1.2(7) of the 1991 Standards do not require

3    exterior accessible routes of travel to be designated with signage and that Johnson has failed to

4    establish the applicability of the CBC to the 7-Eleven facility.  Casper Decl. at 17.

5          Section 4.1.2(7) identifies specific "elements and spaces of accessible facilities" that must

6    include signage bearing the international symbol of accessibility: "(a) Parking spaces designated

7    as reserved for individuals with disabilities; (b) Accessible passenger loading zones; (c)

8    Accessible entrances when not all are accessible (inaccessible entrances shall have directional

9    signage to indicate the route to the nearest accessible entrance); (d) Accessible toilet and bathing

10   facilities when not all are accessible."  As discussed, the parking spaces are demarcated with the

11   appropriate ADA signage and, according to the Casper report, the entrance to the accessible route

12   via the city sidewalk has ADA signage pointing to the direction of the accessible entrance.  Casper

13   Decl. at 58.  Johnson does not contest the remedied signage or identify any other sign violations

14   arising under the ADA.

15         Accordingly, the accessibility parking space signage on 7-Eleven's property complies with

16   the ADA.

17                    **3.      Surface Slope of the Parking Space**

18         Next, Johnson alleges that the surface slope of the accessible parking space violates the

19   ADA.  Compl. ¶ 24.  Pursuant to the 1991 Standards § 4.66.3, "[p]arking spaces . . . shall be level

20   with surface slopes not exceeding 1:50 (2%) in all directions."  Altwal attests that he inspected the

21   ADA parking space and determined that the surface slopes of the accessible parking spaces exceed

22   1:50 or 2% in all directions.  Altwal Decl. ¶ 24.

23         According to the Casper report, the parking space has "complying surface slopes measured

24   at 0% to 2%," and only "one area in the middle left of the van accessible parking space was

25   measured with a 2.4% slope."  Casper Decl. at 29.  With respect to this isolated area, Casper

26   asserts that a "deviation of 0.3% is outside the accuracy of the tool [ ] [he] used to measure the

27

28

slope and, even if accurate, [is] within conventional industry tolerances and therefore compliant with both the 2010 ADA Standards and the 2019 CBC." Casper Decl. at 29. Casper notes he used the same Stabila level as Altwal, which has a +/- 0.35% accuracy. *Id.* He explains the 2.08% slope allowed by code is rounded to 2.1% by the level. *Id.* Thus, a 2.08% slope permitted by the code is rounded to 2.1% by the level with potential inaccuracy of +0.35%, producing a reading of 2.4% slope. *Id.* In his opinion, "slope measurements of 2.4% or less are outside the accuracy level of digital levels to conclude a surface is in violation of the ADA or CBC." *Id.*

In addition, Casper suggests industry guidance supports his conclusion that the accessible parking space fully complies with §§ 208 and 502 of the 2010 Standards. He cites the U.S. Access Board's 2011 research study Dimensional Tolerances for Surface Accessibility, which recommends allowing a deviation of 0.5% be allowed for 20% of the measurements taken of the levelness of the concrete finish of an accessible surface. Casper Decl. at 29.

Johnson does not dispute any of Casper's findings with respect to the surface slope of the accessible parking space.[4]

For the foregoing reasons, the Court finds that the surface slope of the accessible parking space complies with ADA requirements.

### 4. Surface Slope of the Access Aisle

Pursuant to the ADA, accessible parking spaces must have access aisles. The 1991 Standards § 4.66.3 states that "access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions." Johnson alleges that the ADA access aisle next to the accessible parking space has a slope that exceeds 2% in violation of the ADA. Compl. ¶ 25. Altwal's report found that the surface slope exceeds 1:50 or 2% in all directions. Altwal Decl. ¶ 25.

Casper concludes, however, that "the access aisle is free from abrupt changes in level and has complying surface slopes measured at 0% and 2%. Casper Decl. at 29. Casper's various

---

[4] It appears that Defendants have moved the location of the accessible parking space since Altwal inspected the property such that the new location in the parking lot has an ADA-compliant surface slope.

United States District Court
Northern District of California

1    photos and measurements of the access aisle indicate slopes ranging from 0.0% to 1.7%.  Johnson

2    does not contest Casper's conclusion.

3           The Court therefore finds that the surface slope of the access aisle comports with ADA

4    requirements.

5                          **5.       Path of Travel and Curb Ramp**

6           The accessible parking space is connected to an accessible route to both the store entrance

7    and the public sidewalk via a parallel curb ramp.  Johnson alleges the curb ramp encroaches into

8    the accessible parking space access aisle and that the curb ramp side flare is "dangerously sloped."

9    Compl. ¶¶ 26–27.  He alleges that the path or travel from the accessible parking space has a cross

10   slope in excess of 2% in violation of the ADA.  Compl. ¶ 30.  He also alleges that "there is no

11   accessible path from the public right of way into the 7-Eleven store."  Compl. ¶ 22.

12          It appears Defendants have remedied the curb ramp since Altwal's inspection.  Casper's

13   report indicates that the accessible parking space connects to an accessible route via a parallel curb

14   ramp.  Casper Decl. at 46.  According to Casper's measurements, the curb ramp has a running

15   slope of 5.5% to 7.8% and a cross slope of 0.6% to 1.7%.  *Id.*  The bottom of the slope provides

16   sufficient turning space and clearance and has a slope ranging from 0% to 2%.  *Id.*  Casper

17   concludes that the curb ramp is therefore in full compliance with § 406 of the 2010 ADA

18   Standards.

19          The 7-Eleven also has a concrete pathway that extends from the store entrance and the

20   accessible parking space to the city sidewalk.  Casper measured the slope of the walkway at

21   various points, which ranged from 0.8% to 1.5% and a cross slope of 0.8% to 1.6%.  Casper Decl.

22   at 58.  The report concludes that "[t]he accessible route is free from non-complying changes in

23   level and from horizontal gaps exceeding ½" in width and ¼" in depth."  *Id.*  Notably, Casper

24   reports two deviating slope measurements of 2.2% along the pathway leading to the accessible

25   entrance, however, he attributes these deviations to the accuracy of the Stabila level, and

26   regardless, he notes that these deviations are within conventional industry tolerance.  *Id.*  Johnson

27

United States District Court
Northern District of California

1   does not dispute any of Casper's findings.

2          Accordingly, the Court finds that 7-Eleven's curb ramp and path of travel from the

3   accessible parking space to the accessible store entrance and public sidewalk complies with the

4   ADA.

5                    **6.      Entry Door**

6          Johnson alleges that the main door landing has a slope exceeding 2%.  Compl. ¶ 31.

7   However, Casper's report indicates that the landing outside the storefront entry slopes from 0.1%

8   to 2.0% in compliance with the ADA.  Casper Decl. at 71, 77.

9          Johnson also alleges: (1) the entrance door is too heavy to operate because it requires more

10  than five pounds of pressure to operate; (2) the entrance door takes less than 5 seconds to close

11  from 90 degrees open to 3 inches from the closed position; and (3) the floor mat at the entrance is

12  a tripping hazard.  Compl. ¶¶ 32–33; Altwal Decl. ¶¶ 31–32.

13         First, the entrance door is compliant with ADA standards.  The 1991 Standards §

14  4.13.11(2) specifies that "interior hinged doors" and "sliding or folding doors" may not exceed 5

15  pounds of pressure.  Casper Decl. at 19–20.  Neither the 1991 nor the 2010 Standards provide a

16  force limit for "exterior hinged doors," such as entrance doors.

17         Second, Casper posits that Altwal misinterprets the ADA Standards with respect to door

18  closing speed.  Altwal states that the door takes less than 5 seconds to close "from an open

19  position of 90 degrees to 3 in. from the closed position."  Altwal Decl. ¶ 31.  However, the 1991

20  Standards § 4.13.10 specifies that the closing speed should be a minimum of 3 seconds measured

21  from when the door is an open position of 70 degrees to within 3 inches of the closed position.

22  Casper asks the Court to disregard Altwal's opinion with respect to the entrance door closing

23  speed because Altwal failed to evaluate the closing speed under the proper standard.  Casper Decl.

24  at 19.  The Court agrees.

25         Third, Casper notes that movable floor mats at the entry door are not considered carpeting

26  and therefore not subject to the requirements of the 1991 Standards according to guidance

27

United States District Court
Northern District of California

1    provided by the U.S. Department of Justice.  Casper Decl. at 90–91.  He further observes that the

2    floor mats do not impede access for people with disabilities, noting that "[t]he edges of the floor

3    mats are bound with rubber and the change in level between the tiled floor and the floor mat

4    complies with the CBC and ADA requirements for changes in level."  *Id.* at 91.

5         Accordingly, Johnson has not established ADA violations with respect to the entrance door

6    closing speed, the entrance door opening force, nor the floor mats.

7                    **7.    Accessible Interior Aisles**

8         The complaint alleges that interior store aisles and aisle ends do not provide wheelchair

9    clearance and are inaccessible under the 1991 Standards § 4.2.4.2 and CBC § 1114B.1.2.  Compl.

10   ¶ 34; Altwal Decl. ¶ 33.

11        Pursuant to § 4.2.4.1 of the 1991 Standards, "[t]he minimum clear floor or ground space

12   required to accommodate a single, stationary wheelchair and occupant is 30 in[.] by 48 in."

13   However, Section 403.5.1 of the 2010 Standards provides that aisle clearances shall be a minimum

14   36 inches, except for aisles that are a length of 24 inches, in which case "[t]he clear width shall be

15   permitted to be reduced to 32 inches."  According to Casper's report, the store aisle measurements

16   comply with the 2010 Standards because they either exceed 36 inches in width or exceed widths of

17   32 inches for distances of up to 24 inches in length.  Casper Decl. at 78.  Johnson does not contest

18   Casper's findings.

19        Accordingly, the Court finds the store aisles and aisle ends compliant with the ADA.

20                    **8.    ATM Clearance**

21        Johnson alleges that the front of the ATM machine lacks sufficient wheelchair clearance

22   space.[5]  Compl. ¶ 36; Altwal Decl. ¶ 33.

23        Section 4.34.2 of the 1991 Standards require ATMs to have sufficient floor space such that

24

25   ─────────────────────

26   [5] Altwal also notes that there is insufficient clearance space "in front of some vending machines."
     Altwal Decl. ¶ 35.  To the extent there are vending machines that remain in the 7-Eleven, this
     issue appears to be remedied.  During the hearing and in his reply brief Johnson did not contest

27   that this barrier has been remedied.
     Case No.: 5:21-cv-06202-EJD

28   ORDER DENYING PL'S MOT. FOR SUMM. J.; GRANTING DEFS.' CROSS-MOT. FOR
     SUMM. J.; DISMISSING STATE LAW CLAIM WITHOUT PREJUDICE
                    13

*United States District Court*
*Northern District of California*

1   "a person using a wheelchair to make a forward approach, a parallel approach, or both, to the

2   machine."  As noted, under § 4.2.4.1 the minimum floor clearance to accommodate a wheelchair is

3   30 inches by 48 inches.  Casper's report concludes there is sufficient floor clearance space in front

4   of the ATM, measuring 30 inches by 48 inches.  Casper Decl. at 87.

5       Because Johnson does not contest these measurements, the Court finds the ATM clearance

6   complies with the ADA.

7           ### 9.       Sales and Service Counter Height

8       Finally, Johnson alleges that the counters are too high.[6]  Compl. ¶ 37.  Pursuant to the 2010

9   Standards § 904.3.2, sales and service counters shall not exceed 36 inches high measured from the

10  finished floor to the countertop.  Notably, the 1991 Standards § 4.32.4 differ in that it requires

11  counters to "be from 28 in to 34 in (710 mm to 865 mm) above the finish floor or ground."

12      Casper measures the left sales and service counter at 36 inches and the right counter at 36

13  and 1/8 inches high.  Casper Decl. at 88.  Casper believes the 1/8 deviation on the right counter's

14  height is within tolerance of the ADA's requirement of 36 inches or less in height, noting that

15  counters often deviate by up to ¼ of an inch "to allow for leveling (shimming) of the counter upon

16  installation (caused by the flooring)."  *Id.*  He thus concludes that the counter height complies with

17  the 2010 Standards.  *Id.* at 89.  Applying the 1991 Standards, Altwal found that the counters are

18  not 28 to 34 inches above the finished floor.  Altwal Decl. ¶ 36.  Altwal's report does not indicate

19  whether the counters are compliant with the 2010 Standards.  Nevertheless, Johnson does not

20  contest Casper's measurements.

21      Therefore, the Court finds that the sales and service counters are compliant.

22          ### 10.      Plaintiff's ADA claim is moot.

23      The undisputed evidence shows that Defendants have remedied the alleged ADA

24

25  _____

    [6] Johnson also alleges that self-service items, such as the soda machine and lids, straws, and
26  napkins, are too high for wheel-chair users to reach.  Compl. ¶ 35; Altwal Decl. at 33.  However,
    neither Johnson nor Altwal provide the applicable ADA section allegedly violated.

27  Case No.: 5:21-cv-06202-EJD

28  ORDER DENYING PL'S MOT. FOR SUMM. J.; GRANTING DEFS.' CROSS-MOT. FOR
    SUMM. J.; DISMISSING STATE LAW CLAIM WITHOUT PREJUDICE

                                    14

United States District Court
Northern District of California

violations.[7]  Based on the foregoing, the Court finds that the ADA claim is therefore moot and dismissed for lack of subject matter jurisdiction.

### D.    Supplemental Jurisdiction

Plaintiff's only remaining cause of action before the Court arises from California's Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*, seeking statutory damages pursuant to § 55.56(a). Compl. ¶¶ 51–56.

When a federal court has original jurisdiction over a claim, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  State claims are part of the same case or controversy as federal claims "when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."  *Kuba v. 1–A Agric. Ass'n*, 387 F.3d 850, 855–56 (9th Cir. 2004) (citation and quotation marks omitted).  Supplemental jurisdiction is mandatory unless prohibited by § 1367(b), or unless one of the exceptions in § 1367(c) applies.  *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1028 (S.D. Cal. 2017).  Under § 1367(c), a district court may "decline supplemental jurisdiction over a claim" if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

A district court's discretion to decline to exercise supplemental jurisdiction over state law "is informed by the Gibbs values 'of economy, convenience, fairness, and comity.'"  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *United Mine Workers*

---

[7] Defendants alternatively challenge whether Johnson has established that removal of the alleged barriers is readily achievable.  The Court need not address Defendant's alternative argument on the merits [b]ecause mootness is an independent basis for granting summary judgment in favor of Defendant."  *Marquez v. Ralphs Grocery Co.*, No. 8:19-CV-01300-JLS-DFM, 2020 WL 8028235, at *2 (C.D. Cal. Nov. 25, 2020).

Case No.: 5:21-cv-06202-EJD
ORDER DENYING PL'S MOT. FOR SUMM. J.; GRANTING DEFS.' CROSS-MOT. FOR SUMM. J.; DISMISSING STATE LAW CLAIM WITHOUT PREJUDICE

15

United States District Court
Northern District of California

1   *v. Gibbs*, 383 U.S. 715, 726, (1966)).  A court may decline to exercise supplemental jurisdiction

2   under § 1367(c) "under any one of [the statute's] four provisions."  *San Pedro Hotel Co., Inc. v.*

3   *City of L.A.*, 159 F.3d 470, 478–79 (9th Cir. 1998).

4   　　　The Court finds exceptional circumstances warrant declining to exercise supplemental

5   jurisdiction over Johnson's Unruh Act claim.  First, the Unruh Act, which provides both injunctive

6   relief and monetary damages, "substantially predominates" over Plaintiff's ADA claim, which

7   only provides injunctive relief.  *Estrada v. Gold Key Dev., Inc.*, No. 18-CV-03859-SJO, 2019 WL

8   4238891, at *5 (C.D. Cal. May 1, 2019) ("[F]ederal courts often have concluded that the Unruh

9   Act claim for money damages predominates over the federal ADA claim for injunctive relief, and

10  that federal courts are well within their rights to dismiss Unruh claims for lack of jurisdiction.").

11  Second, judicial economy favors declining jurisdiction because there has been no previous motion

12  practice and the Court has not entered any substantive orders.  Indeed, neither party has raised any

13  concern about convenience or fairness.

14  　　　Third, comity favors declining to exercise supplemental jurisdiction.  "California adopted

15  heightened pleading requirements for disability discrimination lawsuits under the Unruh Act."

16  *Velez v. Il Fornaio (Am.) Corp.*, No. 18-CV-1840-CAB-MDD, 2018 WL 6446169, at *6 (S.D.

17  Cal. Dec. 10, 2018).  The heightened Unruh Act pleading standards does not exist at the federal

18  level, which enables plaintiffs to evade California's heightened pleading requirements by asserting

19  an ADA claim and suing in federal court.  Courts in this district—including this Court—have

20  found that "[r]etaining supplemental jurisdiction over such an Unruh Act claim after the ADA

21  claim was dismissed as moot would enable precisely the 'significant adverse impact on federal-

22  state comity' the Ninth Circuit warned about" by enabling plaintiffs to circumvent the heightened

23  pleading standard.  *Garcia v. Dudum*, No. 21-CV-05081-SI, 2022 WL 958377, at *4 (N.D. Cal.

24  Mar. 30, 2022) (quoting *Arroyo v. Rosas*, 19 F.4th 1202, 1211 (9th Cir. 2021)); *see also Whitaker*

25  *v. Ben Bridge-Jeweler, Inc.*, No. 5:21-CV-00808-EJD, 2022 WL 824232, at *3 (N.D. Cal. Mar.

26  18, 2022) (declining to exercise supplemental jurisdiction over plaintiff's Unruh Act claim, in

27

28  Case No.: 5:21-cv-06202-EJD
    ORDER DENYING PL'S MOT. FOR SUMM. J.; GRANTING DEFS.' CROSS-MOT. FOR
    SUMM. J.; DISMISSING STATE LAW CLAIM WITHOUT PREJUDICE
    16

1 | part, to prevent plaintiff from circumventing heightened pleading standards); *Org. for*

2 | *Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1132 (S.D.

3 | Cal. 2005).

4 |      Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's claim

5 | under California's Unruh Act and dismisses this claim without prejudice.

6 | **IV.      CONCLUSION**

7 |      For the reasons set forth above, Plaintiff's motion for summary judgment is **DENIED**,

8 | Defendants' cross-motion is **GRANTED in part**, and Plaintiff's ADA claim is **DISMISSED**.

9 |      Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental

10 | jurisdiction over the remaining Unruh Act claim and **DISMISSES** the claim without prejudice.

11 |      The Clerk shall close the file.

12 |      **IT IS SO ORDERED.**

13 | Dated: June 16, 2023

16 | EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-06202-EJD
ORDER DENYING PL'S MOT. FOR SUMM. J.; GRANTING DEFS.' CROSS-MOT. FOR
SUMM. J.; DISMISSING STATE LAW CLAIM WITHOUT PREJUDICE

17